UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Briar Hill Foods, LLC | ) | Case No. 17-61892 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Russ Kendig |
| An Ohio Limited Liability Company | ) | |
| (Employer Tax I.D. No. 34-1382213) | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Bias Realty, Ltd. | ) | Case No. 17-61893 |
| Debtor. | ) | |
| | ) | |
| An Ohio Limited Liability Company | ) | Judge Russ Kendig |
| (Employer Tax I.D. No. 34-1809039) | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Jack Coffy, LLC | ) | Case No. 17-61894 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Russ Kendig |
| An Ohio Limited Liability Company | ) | |
| (Employer Tax I.D. No. 34-1624101) | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CPW Properties, Ltd. | ) | Case No. 17-61895 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Russ Kendig |
| An Ohio Limited Liability Company | ) | |
| (Employer Tax I.D. No. 34-1809040) | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Thorne Management, Inc. | ) | Case No. 17-61896 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Russ Kendig |
| An Ohio Limited Liability Company | ) | |
| (Employer Tax I.D. No. 34-1334543) | ) | |
| | ) | |

## MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION
## FOR INTERIM AND FINAL USE OF CASH COLLATERAL

Briar Hill Foods, LLC, Bias Realty, Ltd., Jack Coffy, LL, CPW Properties, Ltd., and Thorne Management, Inc. (each a "Debtor" and collectively, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"), hereby moves the Court (the "Motion") for the entry of an order (a) authorizing the Debtors to use cash collateral as that term is defined in § 363(a) of the Bankruptcy Code, on a preliminary and interim basis (b) setting a hearing for continued use of such Cash Collateral and (c) determining that the interests of the Debtors' secured lender, The Huntington National Bank, N.A. ("Huntington"), in Cash Collateral is adequately protected pursuant to § 363(e) of the Bankruptcy Code.

In support of this Motion, the Debtors respectfully represents as follows:

### Bankruptcy Rule 4001 Concise Statement

1. By this motion, the Debtors request entry of an order (i) granting authorization to use cash collateral pursuant to sections 105(a), 361, and 363 of title 11 of chapter 11 of the United States Code (the "Bankruptcy Code") in accordance with the terms of the proposed cash interim collateral budget attached hereto as Exhibit A (the "Budget"), (ii) setting a hearing for continued use of such Cash Collateral, and (iii) granting replacement liens as adequate protection pursuant to section 361, 362, 363(e), and 507 of the Bankruptcy Code to the Debtors' prepetition secured lender.

2. The relief the Debtors request can be concisely summarized as follows:

| | |
|---|---|
| **Borrowers** *Bankruptcy Rule 4001(b)(1)(B)* | Briar Hill Foods, LLC, Bias Realty, Ltd., Jack Coffy, LLC and CPW Properties, Ltd. |
| **Cash Collateral Lender** *Bankruptcy Rule 4001(b)(1)(B)(i)* | The Huntington National Bank, N.A. |
| **Purposes** | Administrative and related general business expenses necessary to |

| | |
|---|---|
| *Bankruptcy Rule 4001(b)(1)(B)(ii)* | continue the Debtors' limited operations. |
| **Duration** *Bankruptcy Rule 4001(b)(1)(B)(iii)* | August 25 through September 25, 2017 for the requested interim relief. |
| **Budget** *Bankruptcy Rule 4001(b)(1)(B)(iii)* | The proposed Budget is attached as Exhibit A. |
| **Adequate Protection for Prepetition Lenders** *Bankruptcy Rule 4001(b)(1)(B)(iv)* | Adequate protection for Huntington (to the extent of diminution in the value of their collateral) shall be replacement liens. |

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this district's general order of reference of July 16, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The venue of the Debtors' Chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and Local Bankruptcy Rules.

## BACKGROUND

5. On August 25, 2017 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

6. The Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed.

### A. Summary of Capital Structure and Current Business Operations

7. Briar Hill Foods, LLC, ("Briar Hill") is a limited liability company formed under the laws of the State of Ohio and headquartered in Salem, Ohio. Briar Hill previously operated retail grocery stores in Northeast Ohio known as (a) Thorne's IGA, located at 653 S Union Ave, Alliance, Ohio (the "Alliance Store"); (b) Thorne's IGA Carrollton, located at 501 West Main

3

St., Carrollton, Ohio (the "Carrollton Store"); and (c) Thorne's IGA, located at Unit 17 of College Plaza, Alliance, Ohio (the "College Store"). As discussed below, a receiver has been appointed over the assets of Briar Hill and the Alliance, Carrollton and College Stores have ceased operations.

8. Bias Realty, Ltd. ("Bias Realty") is a limited liability company formed under the laws of the State of Ohio and headquartered in Salem, Ohio. Bias Realty previously operated a retail grocery store and pharmacy known as Thorne's Jefferson Bi Lo, located at 344 South Chestnut Street, Jefferson, Ohio (the "Bias Store"). As discussed below, a receiver has been appointed over the assets of Bias Realty and the Bias Store has ceased operations.

9. Jack Coffy, LLC ("Coffy") is a limited liability company formed under the laws of the State of Ohio and headquartered in Salem, Ohio. Coffy previously operated a retail grocery store known as Coffy's Supermarket, located at 264 South Main Street, Cadiz, Ohio (the "Coffy Store"). As discussed below, a receiver has been appointed over the assets of Coffy and the Coffy store has ceased operations.

10. CPW Properties, Ltd. ("CPW") is a real estate holding company that owns certain real property leased by affiliate Debtors in connection with the Alliance Store, Carrollton Store, Bias Store, and Coffy Store. As discussed below, a receiver has been appointed over the assets and properties of CPW.

11. Thorne Management, Inc. ("Thorne Management") is a management and real estate holding company that owns the main office of the Debtors and certain non-debtor affiliates. Thorne Management also leases its commercial real property space to certain other tenants. As discussed below, a receiver has been appointed over the assets and properties of Thorne Management.

12.     The stocks or shares, as the case may be, of Briar Hill, Bias Realty, and Coffy are owned or controlled by The Thorne Group, LLC ("Thorne Group"). Thorne Group is a holding company whose shares or units are owned by debtor Thorne Management and non-debtors (a) Briar Hill Holdings, LLC, (b) Jack Coffy Holdings, LLC, (c) the William T. Thorne Revocable Trust (the "Thorne Trust"), (d) the Pamela T. Wagner Revocable Trust (the "Wagner Trust"), and (e) the Cindy L. Wine Revocable Trust (the "Wine Trust" and together with the Thorne Trust and the Wagner Trust, the "Trusts"). The Trusts each also own 1/3 of the shares of CPW and Thorne Management.

### B.     Prepetition Debt Structure

#### i.     *Prepetition Obligations to Huntington*

13.     On November 30, 2012 the Debtors and certain non-debtor entities, The Bias Group Enterprises, LLC, The Thorne Group, LLC, Thorne Foods of Pennsylvania, LLC, Thorne Foods, Inc. and Thorne Foods, Inc. – Jefferson (collectively, the "Non-Debtor Borrowers" and together with the Debtors, the "Borrowers") entered into that certain Business Loan Agreement with The Huntington National Bank, N.A. ("Huntington"). In connection therewith, on November 30, 2012, the following agreements and documents were entered into with, or executed in favor of, Huntington:

    a. Promissory Notes executed by the Borrowers:

        i. Promissory Revolving Note in the original principal amount of $500,000 (the "Line of Credit") with a maturity date of November 30, 2013;

        ii. Promissory Term Note in the original principal amount of $1,492,730.18 ("Term Note 1") with a maturity date of December 5, 2015;

        iii. Promissory Term Note in the original principal amount of $525,748 ("Term Note 2") with a maturity date of December 5, 2015;

        iv. Promissory Term Note in the original principal amount of

5

$8,650,735.47 ("Term Note 3" and together with Line of Credit, Term Note 1 and Term Note 2, the "Notes") with a maturity date of December 5, 2015.

b. Commercial Guaranties executed by the following parties (collectively, the "Non-Debtor Guarantors" and together with the Borrowers, the "Obligors"):

   i. Cynthia Thorne-Wine, with an exposure limit of $187,500;

   ii. Pamela Thorne-Wagner, with an exposure limit of $187,500;

   iii. Theodore F. Thorne, with an exposure limit of $187,500;

   iv. William T. Thorne, with an exposure limit of $187,500;

   v. Briar Hill Holdings, LLC;

   vi. Jack Coffy Holdings, LLC; and

   vii. Seneca Real Estate Group, LLC.

c. Open-End Mortgages and Assignments of Rent securing the amount of $11,169,213.65 executed by CPW and Thorne Management, encumbering the following real property:

   i. 653 South Union Avenue, 623-634 Scranton Avenue, and 652-654 Scranton Avenue, Alliance, Stark County, Ohio 44601 (collectively, the "Stark Properties") (owned by CPW);

   ii. 264 South Main Street, Cadiz, Harrison County, Ohio 43907 (the "Harrison Property") (owned by CPW);

   iii. 475 West Main St., Carrollton, Ohio 44615; 351 West Main St., Carrollton, Ohio 44615; Lot 5 in Pierson's Addition to Village of Carrollton; 501 West Main St., Carrollton, Ohio 44615; 517 West Main St., Carrollton, Ohio 44615; 367 West Main St., Carrollton, Ohio 44615; and 525 West Main St., Carrollton, Ohio 44615 (collectively, the "Carrollton Properties") (owned by CPW);

   iv. 57 East Mulberry Street, Jefferson, Ohio 44047; 51 East Mulberry Street, Jefferson, Ohio 44047; East Cedar Street, Jefferson, Ohio 44047; 344 South Elm Street, Jefferson, Ohio 44047; 344 South Chestnut Street, Jefferson, Ohio 44047; and 59 East Mulberry Street, Jefferson, Ohio 44047 (collectively, the "Ashtabula Properties") (owned by CPW); and

   v. 1434-1466 Franklin Avenue, Salem, Ohio 44460 (the "Columbiana Property") (owned by Thorne Management).

d. Commercial Security Agreement executed by the Borrowers and certain of the Non-Debtor Guarantors whereby the Borrowers and those certain Non-Debtor Guarantors granted a security interest to Huntington in and to substantially all of their personal property assets (the "Huntington Lien").

e. ISDA Master Agreement entered into by the Borrowers.

f. Cross Default and Collateralization Agreement entered into by the Borrowers and the Non-Debtor Guarantors.

14. In December 2013, after Huntington declared a default under the Business Loan Agreement, Huntington and the Obligors entered into that certain Forbearance Agreement whereby the Obligors released Huntington from any and all claims and Huntington agreed to forbear and defer from executing its rights and remedies against the Obligors during the forbearance period. Huntington and the Obligors entered into various modifications and addendums to the Forbearance Agreement, the most recent being that certain Sixth Addendum to Forbearance and Modification Agreement dated June 29, 2016 (collectively, the "Forbearance Agreement").

15. As of June 29, 2016, all of the Notes, other than Term Note 3, were paid in full by the Borrowers. As of August 25, 2017, the outstanding unpaid principal balance of Term Note 3 was approximately than $2,508,085.12.

16. During the receivership (as discussed below) Huntington advanced not less than $189,024.06 to the Receiver to manage the Receivership Property (as defined below).

### ii. Prepetition Obligations to C&S

17. On June 23, 2011, Briar Hill, Bias Realty, Coffy and certain other non-Debtor affiliates (the "C&S Borrowers") and C&S Wholesale Grocers, Inc. ("C&S") entered into that certain Supply Agreement (the "Supply Agreement"). On June 23, 2011, the C&S Borrowers and C&S entered into that certain Amended and Restated Security Agreement (the "Security Agreement"). Pursuant to the Security Agreement, the C&S Borrowers granted a security

interest to C&S in and to substantially of their personal assets (the "C&S Lien") to secure any obligations incurred by the C&S Borrowers to C&S (the "C&S Obligations"), including those obligations incurred pursuant to the Supply Agreement.

### iii. Subordination

18. On November 30, 2012, Huntington and C&S entered into that certain Subordination Agreement (the "C&S Subordination Agreement"). As set forth in the Subordination Agreement, Huntington and C&S agreed that C&S's security interests would have superior priority on the personal property assets of Coffy and Bias Realty. With respect to the assets of the remaining Debtors, the Non-Debtor Borrowers and the Non-Debtor Guarantors, C&S subordinated the C&S Lien to the Huntington Lien.

C. **Receivership Actions**

i. **The Stark County foreclosure action.**

19. On March 10, 2017, Huntington commenced a foreclosure action against Debtors and others non-parties to this action in the Stark County Court of Common Pleas, styled as *The Huntington National Bank v. The Thorne Group, LLC, et al.*, Stark County Case No. 2017CV00541 (the "Stark Foreclosure Action"). In the Stark Foreclosure Action, Huntington seeks to foreclose on certain real property owned by CPW.

20. On April 27, 2017, an agreed order appointing a receiver was entered in the Stark Foreclosure Action (the "Stark Receivership Order"). The Stark Receivership Order appointed exSELLit Receiver, LLC (the "Receiver") to take possession of, manage, control, protect, and sell the Stark Properties and all rents, leases, and other personal property or assets that in any way relate to the Stark Properties (collectively, the "Stark Receivership Property").

ii. **The Carroll County foreclosure action.**

2. On May 18, 2017, Huntington commenced a foreclosure action against CPW and

Thorne Management in the Carroll County Court of Common Pleas, styled as *The Huntington National Bank v. CPW Properties, Ltd., et al.*, Carroll County Common Pleas Case No. 17CVE28798 (the "Carroll Foreclosure Action"). In the Carroll Foreclosure Action, Huntington seeks to foreclose on certain real property owned by CPW.

21. Also on May 18, 2017, an agreed order was entered in the Carroll Foreclosure Action appointing a receiver (the "Carroll Receivership Order"). The Carroll Receivership Order appointed the Receiver to take possession of, manage, control, protect, and sell the Carrollton Properties and all rents, leases, and other personal property or assets that in any way relate to the Carrollton Properties (collectively, the "Carroll Receivership Property").

   iii. **The Columbiana County foreclosure action.**

22. On May 18, 2017, Huntington commenced a foreclosure action against Thorne Management and others in the Columbiana County Court of Common Pleas, styled as *The Huntington National Bank v. Thorne Management, Inc., et al.*, Columbiana County Common Pleas Case No. 2017CV264 (the "Columbiana Foreclosure Action"). In the Columbiana Foreclosure Action, Huntington seeks to foreclose on certain real property owned by Thorne Management.

23. On May 19, 2017, an agreed order appointing a receiver was entered in the Columbiana Foreclosure Action (the "Columbiana Receivership Order"). The Columbiana Receivership Order appointed the Receiver to take possession of, manage, control, protect, and sell the Columbiana Property and all rents, leases, and other personal property or assets that in any way relate to the Columbiana Property (collectively, the "Columbiana Receivership Property").

### iv. The Harrison County foreclosure action.

24. On May 19, 2017, Huntington commenced a foreclosure action against CPW and others in the Harrison County Court of Common Pleas, styled as *The Huntington National Bank v. CPW Properties, Ltd., et al.*, Harrison County Common Pleas Case No. CVE 2017-0065 (the "Harrison Foreclosure Action"). In the Harrison Foreclosure Action, Huntington seeks to foreclose on certain real property owned by CPW.

25. On May 23, 2017, an agreed order appointing a receiver was entered in the Harrison Foreclosure Action (the "Harrison Receivership Order"). The Harrison Receivership Order appointed the Receiver to take possession of, manage, control, protect, and sell the Harrison Property and all rents, leases, and other personal property or assets that in any way relate to the Harrison Property (collectively, the "Harrison Receivership Property").

### v. The Ashtabula County foreclosure action.

26. On May 22, 2017, Huntington commenced a foreclosure action against CPW and others in the Ashtabula County Court of Common Pleas, styled as *The Huntington National Bank v. CPW Properties, Ltd., et al.*, Ashtabula County Common Pleas Case No. 2017 CV 00402 (the "Ashtabula Foreclosure Action" and together with the Stark Foreclosure Action, the Carrollton Foreclosure Action, the Columbiana Foreclosure Action, and the Harrison Foreclosure Action, the "Foreclosure Actions"). In the Ashtabula Foreclosure Action, Huntington seeks to foreclose on certain real property owned by CPW.

27. On May 26, 2017, an agreed order appointing a receiver was entered by Judge Gary L. Yost in the Ashtabula Foreclosure Action (the "Ashtabula Receivership Order" and together with the Stark Receivership Order, the Carroll Receivership Order, the Columbiana Receivership Order, and the Harrison Receivership Order, the "Receivership Orders"). The Ashtabula Receivership Order appointed the Receiver to take possession of, manage, control,

protect, and sell the Ashtabula Properties and all rents, leases, and other personal property or assets that in any way relate to the Ashtabula Properties (collectively, the "Ashtabula Receivership Property" and together with the Stark Receivership Property, the Carroll Receivership Property, the Columbiana Receivership Property, and the Harrison Receivership Property, the "Receivership Property"):.

**D.  The Receivership Orders and actions taken by the Receiver.**

28.   Other than applying to different receivership property the Receivership Orders are substantially similar in all material respects. Pursuant to the Receivership Orders, the Receiver was authorized to have complete exclusive possession, control and custody of the Receivership Property and was generally authorized to take all actions necessary to properly and adequately manage, control, operate, maintain, and protect the Receivership Property during the Foreclosure Actions.

**E.  Events Leading To The Filing Of These Chapter 11 Cases**

29.   Other than Thorne Management, which continues to lease property to commercial tenants, the Debtors have ceased operations. All of the Debtors' properties are subject to the Receivership Orders.

30.   Since its appointment in the Foreclosure Actions, the Receiver has made substantial progress in marketing and negotiating the sale of the Receivership Properties. The Receiver anticipates receipt of a stalking horse asset purchase agreement for the Debtors' assets and real estate in the coming days.  Given the fact that there are five separate receivership actions, issues with utility providers that can be avoided under the Bankruptcy Code and potential unfunded pension liability issues, Huntington and the Debtors (in consultation with the anticipated stalking horse purchaser) have determined that a sale of the Debtors' assets is more appropriately conducted under the ambit of the Bankruptcy Court.  However, removing the

11

Receiver from these negotiations and imminent sales will impede the orderly sale of these properties and may jeopardize them altogether, to the detriment of Debtors' creditors and estates. Accordingly, the Debtors have commenced these chapter 11 cases and intend to request that this Court authorize the Receiver to remain as custodian of the assets and property of the estates.

## RELIEF REQUESTED

31. By this Motion, the Debtors seek an Order, pursuant to section 363 of the Bankruptcy Code and Rules 2002 and 4001(b) of the Bankruptcy Rules: (i) authorizing the Debtors to use the cash collateral of Huntington (the "Cash Collateral") on an interim basis in order to pay the Debtors' limited operating expenses (ii) establishing that the interests of Huntington will be adequately protected; (iii) setting a hearing for continued use of the Cash Collateral; and (iv) approving the form and manner of the notice.

## BASIS FOR RELIEF

32. The Debtors need to be able to use Cash Collateral in order to maintain operations pending a sale of the properties. The Debtors are in immediate need of cash to pay necessary business expenses, to continue their operations and to avoid immediate and irreparable harm to their bankruptcy estates. It is imperative that the Debtors obtain authority to use the Cash Collateral in order to continue to operate their businesses and to fund the costs associated with such operations and the administration of the Chapter 11 Case and in accordance with the Budget.

33. Other than the Thorne Management collections, which are minimal, the Debtors are not operating. In addition to the collection and use of the Thorne Management receivables, the Debtors seek to use the amounts remaining under the Advance in order to maintain operations, including for payment of the necessary expenses set forth in the Budget.

34. The Debtors' use of the Cash Collateral, including the Debtors' agreement to provide replacement liens as adequate protection in connection with such use, is authorized pursuant to section 363(c) of the Bankruptcy Code. Section 363(c) provides as follows:

> (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
>
> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless -
>
>> (A) each entity that has an interest in cash collateral consents; or
>>
>> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provision of this section.

35. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as, *inter alia*, cash, deposit accounts, or other cash equivalents, whenever acquired, in which the estate and an entity other than the estate have an interest, and includes the proceeds, products, offspring, rents or profits of property subject to the security interest as provided under section 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under the Bankruptcy Code.

36. The cash and accounts receivable existing as of the Petition Date owned by the Debtors, among certain other assets of their bankruptcy estates, constitute cash collateral of Huntington within the meaning of section 363(a).[1] The Debtors submit that they have reached an agreement with Huntington to use the Cash Collateral pursuant to 363(c)(2)(A). To the extent Huntington does not consent to the use of the Cash Collateral, the Debtors seek authorization to use the Cash Collateral in accordance with section 363(c)(2)(B).

---

[1] While C&S has priority on the personal property owned by Debtors Coffy and Bias Realty, these Debtors have ceased operations and no cash collateral is collected by any Debtors other than Thorne Management.

37. In order to use cash collateral in accordance with section 363 of the Bankruptcy Code, a debtor is required to provide each party with an interest in cash collateral, to the extent applicable, adequate protection for such use of cash collateral, as contemplated by section 361 of the Bankruptcy Code.

38. As adequate protection for the Debtors' use of Cash Collateral, the Debtors will grant Huntington replacement security interests and liens subject to the Carve-Out (to the same extent, validity, enforceability, perfection and priority as the security interests and liens that Huntington had immediately preceding the Petition Date) and to the extent of diminution in the value of their collateral in and to the following property of the Debtors and their bankruptcy estate, whether acquired prior to, on, or subsequent to the Petition Date (collectively, the "Replacement Liens"): accounts, accounts receivable, contract rights, chattel paper, inventory, general intangibles, machinery, equipment, furniture and fixtures, including proceeds of the foregoing (collectively, the "Post Petition Collateral").

39. The liens, mortgages and security interests granted to Huntington, including the Replacement Liens, shall be subject and subordinate to a carve-out of up to $100,000 for the allowed fees and expenses of Brouse McDowell, LPA, proposed counsel to the Debtors, whether incurred before or after an Event of Default or termination of this Order (the "Carve-Out").

40. The Debtors submit that as a result of granting Huntington the Replacement Liens, the Debtors satisfy the requirements of adequate protection under sections 361 and 363(e), and should be authorized to use the Cash Collateral as requested herein.

41. In order to protect the assets that comprise its estate and to propose a section 363 sale, consistent with the intent and purpose of chapter 11 of the Bankruptcy Code, the Debtors need a source of cash.

14

17-61892-rk    Doc 4    FILED 08/25/17    ENTERED 08/25/17 17:29:21    Page 14 of 16

42. Accordingly, the Debtors request authority to utilize the Cash Collateral on an interim basis. All such funds shall be utilized for costs and expenses incurred in the administration of the Debtors' Chapter 11 Case, and shall be utilized for such other costs and expenses that may be approved by the Court. Such expenditures are necessary to avoid immediate and irreparable harm to the Debtors' estate.

43. In order to obtain the relief requested herein, the Debtors request that the Court conduct a preliminary hearing pending the final hearing to be held pursuant to Bankruptcy Rule 4001(b). In connection with such preliminary hearing, the Debtors request that the Court authorize it to use that amount of Cash Collateral that is essential to avoid immediate and irreparable harm to the Debtors' estate in accordance with the terms of the attached Exhibit B.

44. The relief requested herein is without prejudice to any further requests by the Debtors to use the Cash Collateral, and the Debtors reserve all of their rights with respect thereto.

## REQUEST FOR FINAL HEARING

45. Pursuant to Bankruptcy Rule 4001(b), a final hearing on this Motion to use Cash Collateral may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on such motion and authorize use of cash collateral to avoid immediate and irreparable harm to a debtor's estate. *See* Bankruptcy Rule 4001(b)(2).

46. The Debtors request that the Court (i) conduct an expedited hearing with respect to this Motion and (ii) schedule the final hearing on the use of Cash Collateral at the earliest possible date in accordance with Bankruptcy Rule 4001(b).

## NOTICE

47. Notice of the Motion has been given to (a) the Office of the United States Trustee for the Northern District of Ohio, (b) Huntington, (c) C&S, and (d) each of the Debtors' 20

largest unsecured creditors. The Debtors submit that, under the circumstances, no other or further notice need be given.

48. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the Debtors request the relief sought by this Motion be immediately effective and enforceable upon entry of the order requested hereby.

49. No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order: (i) authorizing Debtors to use the Cash Collateral of Huntington on a preliminary and interim basis; (ii) establishing that the interests of Huntington will be adequately protected; (iii) setting a hearing for continued use of such Cash Collateral; and (iv) approving the form and manner of the notice.

Respectfully submitted,

/s/ *Kate M. Bradley*
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
BROUSE MCDOWELL, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*

1003610